

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

YOLANDA JORDAN, o/b/o )
SYLVESTER MCCURRY, )
a minor ) No. 07 C 3496
)
    Plaintiff, )
)
v. ) Judge Arlander Keys
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Yolanda Jordan, moves this court for Summary Judgment, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, to reverse or remand the final decision of the Commissioner of Social Security (the "Commissioner"), who denied her son, Sylvester McCurry's, claim for Child's Supplemental Security Income ("SSI"). 42 U.S. C. § 401 *et seq.* (West 2007). Defendant Commissioner has filed a Cross-Motion for Summary Judgment. For the reasons set forth below, the Court denies the Commissioner's Cross-Motion for Summary Judgment, and grants Plaintiff's Motion for Summary Judgment, in part.

### Procedural History

Ms. Yolanda Jordan filed a claim for SSI on behalf of her minor son, Sylvester McCurry, on March 26, 2003. R at 20-22. The claim was denied initially and upon reconsideration. Plaintiff requested and received a hearing before Administrative

Law Judge ("ALJ") Angelo Nicchitta in October of 2005. On January 27, 2007, the ALJ issued a decision denying Plaintiff's application, concluding that Sylvester possessed resources in excess of $2,000.00, which rendered him ineligible to receive benefits. In reaching his conclusion, the ALJ determined that Sylvester had control over a certificate of deposit ("CD") in the amount of $25,000.00 and a money-market account in the amount of $5,000. The ALJ rejected Plaintiff's claim that these assets were excludable resources.

Plaintiff appealed the ALJ's decision to the Appeals Council. R at 208-210. In support of her appeal, Plaintiff submitted a letter from Judge Kathleen McGury of the Cook County Circuit Court, Probate Division. Judge McGury wrote that a "court only approves withdrawals . . . for extraordinary and not day to day expenses." R at 211. She opined that the funds should not be considered "income" for purposes of determining eligibility for SSI. *Id.*

On April 24, 2007, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. R at 4. The Appeals Council considered Plaintiff's arguments and Judge McGury's letter, but found that they did not provide a basis for changing the ALJ's decision. R at 4-5.

## Background Facts

Sylvester McCurry was born on April 15, 1994. R at 20. On May 30, 1997, Sylvester fell two stories onto a concrete floor, sustaining massive trauma to his head. R at 77. A CT scan indicated damage to the posterior parietal convexity with associated soft tissue swelling. R at 77. As a result of the injury, Sylvester suffers from frequent severe headaches and vomiting episodes, and he misses a great deal of school. R at 73.

Dr. Erlinda Uy examined Sylvester on August 29, 2002, noting that his mental development was slow, and at eight years old, he did not know his birthdate yet, and had difficulty remembering the name of his school. R at 162. Dr. Uy noted Sylvester's head trauma and his history or possible slow learning disability. R at 163.

## Evidence Before the ALJ

A. Yolanda Jordan's Testimony

Ms. Jordan testified that the CD and money market accounts set up for Sylvester's benefit were accessible only through a court order. R at 216. She explained that she and her son, who was quite ill at the time, went to court to petition to have funds released for his benefit. Ms. Jordan stated that the court denied the petition for a distribution and suggested that Ms. Jordan apply to the Social Security Administration ("SSA") for SSI. R at 216. When Ms. Jordan explained that her previous SSI

3

application had been denied because the two accounts had rendered Sylvester ineligible for aid, the judge told her to reapply and to tell the SSA that Sylvester could not access the accounts until he is eighteen years old.

B.  Jerome Feldman's Affidavit

Mr. Feldman represented Sylvester in his successful personal injury lawsuit. The CD and money market account at issue were created with proceeds derived from that lawsuit. Mr. Feldman's affidavit states that "as a matter of law, and in accordance with the rules of the Probate Division of the Circuit Court of Cook County, none of the funds are available to Sylvester McCurry, Jr. and/or his mother, Yolanda Jordan until he reaches his majority on April 15, 2012." R at 33-34. Mr. Feldman also stated that "the courts in Cook County, and especially in the Probate Division, are extremely reluctant and make it very difficult to have Yolanda Jordan withdraw any money for Sylvester McCurry Jr." Id.

### The ALJ'S Decision

On January 27, 2005, the ALJ determined that Sylvester was not eligible for Child's SSI, because he had resources in excess of $2,000. R at 19. In reaching his conclusion, the ALJ examined both the pertinent regulations, as well as Illinois law. The ALJ noted that Section 1611(a)(1)(B) of the Social Security Act provides that an eligible individual is an aged, blind or

4

disabled individual who has non-excludable resources of not more than $2,000. Section 416.1201 of Regulation No. 16 defines "resource" as cash or other liquid assets or any real or personal property that an individual owns and could convert to cash to be used for his support or maintenance. 20 C.F.R. § 416.1205 (e). Section 416.1201 of Regulation No. 16 defines liquid resources as those assets that are in cash or are financial instruments that are convertible to cash. 20 C.F.R. § 416.1201(b). The ALJ found that Sylvester's money market account and CD fall under 416.1201( c), which defines nonliquid resources as including all other properties over which the claimant has rights, authority or power, including both real and personal property. Such resources are evaluated according to their equity value, except as otherwise provided, and are countable in determining eligibility.

Conservatorship accounts, or blocked accounts, like the accounts involved here, are similar to trusts and are generally evaluated under the Administration's Program Operations Manual System's ("POMS") rules for conservatorship accounts. The POMS rules provides that "we assume, absent evidence to the contrary, that the funds in such an account are available for the individual's support and maintenance, and are, therefore, that individual's resource." POMS SI 01140.215(B)(1). Under the POMS, in determining whether there is evidence contrary to the assumption that funds should be available, the Agency will

5

consider such evidence as: 1) any restrictive language in the court order that established the account or in a subsequent court order; 2) state and local procedural rules for withdrawal of funds from the account; and 3) local court practices regarding the withdrawal of funds. POMS SI 01140.215(B)(2). Here, the court order did not include any restrictive language indicating that the funds could not be used for support and maintenance; and there have not been any written orders from the court. R at 35. Moreover, Illinois POMS supplement for blocked accounts provides that in Illinois, a guardian has the duty to apply the minor's estate as necessary for his comfort, support, and education; as such, the funds in a blocked account "should be considered a countable resource." POMS SI CHI101140.215(B)(1).

The ALJ next turned to Illinois law. Relying on *Vlahos v. Andrews*, 1 N.E.2d 59, 61-62 (Ill. 1936), the ALJ determined that, if the settlor is the sole beneficiary of a trust, and is not under an incapacity, he can compel the termination of the trust, although the purpose of the trust has not been accomplished. Pursuant to *Stewart v. Merchants Nat'l Bank of Aurora*, 278 N.E.2d 10, 12 (2d Dist. 1972), the ALJ determined that Sylvester is both the settlor and beneficiary of the trusts held by the court, and falls under the general rule that one who is both the settlor and beneficiary of a trust has the control power and authority over the trust to compel its termination or distribution.

## Standard Of Review

A district court reviewing an ALJ's decision must affirm if the decision is supported by substantial evidence and is free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla"; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing an ALJ's decision for substantial evidence, the Court may not "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)(citations omitted). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

An ALJ must articulate his analysis by building an accurate and logical bridge from the evidence to his conclusions, so that the Court may properly review the Commissioner's ultimate findings. *Steele*, 290 F.3d at 941. It is not enough that the record contains evidence to support the ALJ's decision; if the ALJ does not rationally articulate the grounds for that decision, or if the decision is not sufficiently articulated, so as to prevent meaningful review, the Court must remand. *Id.*

**Discussion**

I. The ALJ's Decision That The Accounts Are Resources for Determining SSI Eligibility Is Not Supported By Substantial Evidence

Federal regulations provide that an individual who otherwise qualifies for SSI is not entitled to receive such benefits if he has more than $2,000 available for his care and maintenance. *White v. Apfel,* 167 F.3d 369, 371 (7th Cir. 1999). This Court must determine whether substantial evidence supports the ALJ's conclusion that the CD and money market accounts, established with the proceeds from Sylvester's personal injury settlement, constitute resources available for Sylvester's care and maintenance.

The ALJ properly turned to the POMS to determine whether Sylvester's accounts are "countable resources." The POMS provides that "[i]f an individual does not have the legal authority to revoke the trust or direct the use of the trust assets for his/her own support and maintenance, the trust principal is not the individual's resource for SSI purposes." POMS SI 01120.200(D)(2); 20 C.F.R. §416.1201(s). The language of the trust, as well as Illinois law, determine whether the trust is revokable. *Kemble v. Barnhart,* 2004 WL 542531, at *2 (N.D.Ill. Mar. 10, 2004). The express terms of Sylvester's Trust provide that the proceeds will be distributed when he reaches the age of majority, or earlier if so ordered by the

8

court. Specifically, the Trust provides that "an account in the name of the minor to be held subject to further order of court or to be released to the minor without further order upon the attainment of majority on April 15, 2012." R at 35. The Trust does not otherwise limit the court's authority to distribute these proceeds. *Id.*

Turning to general contract law, the Court notes that a trust is presumed to be irrevokable if the grantor fails to reserve the power to revoke the trust. *Id.* (citing *Williams v. Springfield Marine Bank,* 131 Ill. App.3d 417 (1985)). However, "a trust that purports to be irrevocable can be revoked if the settlor of the trust is also the sole beneficiary." *Id.*

Plaintiff argues that neither Sylvester nor his mother have the authority to revoke the Trust, prior to Sylvester reaching the age of majority, and note that Sylvester's mother is required to petition the circuit court for any distributions. However, the requirement to petition the court for distributions does not mean that the Trust's proceeds are not available for Sylvester's support and maintenance. Specifically, the POMS state that:

> Denial by the court of a request for withdrawal of funds *does not necessarily* mean that funds in the account are unavailable for the individual's support and maintenance. If the court approves requests to withdraw funds in order to provide support and maintenance, and only disapproves requests for non-essential items, the funds are considered available and a resource for SSI purposes. The [field office] adjudicator should review the history of petitions for (and approvals and denials of) withdrawal of funds. If a denial by the court appears to be an exception rather than

9

the rule, the funds may be determined to be a resource for SSI purposes.

POMS SI 01140.215(B)(3) (emphasis added).

In the instant case, the Record contains precious little evidence demonstrating when, how, and why Ms. Jordan requested the withdrawal of funds, and whether and why such request(s) were denied. As the government correctly notes, the Record does not contain copies of Ms. Jordan's alleged petitions seeking distributions from the Trust, or court orders denying such petitions. The Court further notes that the settlement funds were placed in interest bearing accounts in 1999; yet the Record indicates that the funds had decreased significantly, presumably[1] by court order. Although Plaintiff's counsel indicated that Plaintiff was attempting to obtain the court order(s) denying her alleged request(s) for funds, the evidence was not provided, despite the fact that the ALJ waited 60 days in anticipation of such evidence before issuing his decision. *See* R at 80-81.

Plaintiff suggests that, absent an order directing her to produce better evidence, the ALJ was required to either accept the Plaintiff's testimony on the matter or explain why he found

---

[1] Plaintiff makes no argument regarding, and has offered no evidence explaining how these interest bearing accounts decreased in value over the past nine years. This raises the inference that Plaintiff has previously petitioned the circuit court for a release of funds and that such a request was granted. Such an inference supports the Commissioner's position that the funds are, in fact, available for Sylvester's care and maintenance.

the testimony incredible. But Ms. Jordan's testimony is rather sparse. At the hearing, Ms. Jordan stated only that she went to the circuit court with Sylvester, who was ill at the time. Ms. Jordan claims that the judge refused to release the funds, instructing her to apply for SSI instead, and to explain to the Social Security Administration that she wasn't able to touch the Trust until Sylvester turned eighteen. R at 216-218.

Moreover, the ALJ's decision does not hinge upon a finding that Ms. Jordan's testimony was incredible. To the contrary, the ALJ determined that, under the Probate Act, Plaintiff has the right to obtain the funds in the CD and money market accounts if those funds are necessary for Sylvester's care. R at 18. But while the ALJ's finding is consistent with Illinois law, see *In re Estate of Hickey*, 635 N.E.2d 853, 855 (Ill. App. 1994) (ruling that a trust, created for the purpose of sheltering monies from the requirement that persons receiving public assistance exhaust personal resources before becoming eligible for government help, is contrary to section 15.1 of the Trust and Trustees Act), Illinois law on this point is not so clear cut so as to relieve the ALJ from his obligation to discuss the limited evidence presented by Plaintiff in support of her position.

The issue of whether funds in a blocked account constitute resources is far from settled, and the inquiry is fact specific. *Compare Frerks v. Shalala*, 52 F.3d 412 (2d Cir. 1995) (finding

that, even though Frerks needed a court order to access the funds, and the court didn't always grant the request, the funds were nevertheless resources) *with Navarro v Sullivan,* 751 F. Supp. 349 (E.D.N.Y 1990) (funds in a restricted account, available only for extraordinary purposes, are not countable income). In certain instances, courts in this district have held that trusts holding proceeds from personal injury settlements are not resources for purposes of determining eligibility for SSI. *See Kemble,* 2004 WL 542531, at *2-3 (a trust naming a supplemental beneficiary is not revocable and therefore cannot be labeled a countable resource by the SSA).

In a remarkably similar case, *White ex rel Smith v. Apfel,* 167 F.3d 369, 270 (7th Cir. 1999), the Seventh Circuit ruled that proceeds from a personal injury settlement placed in a restrictive trust are not liquid resources under Missouri law. The government makes much of the fact that the *White* decision rested, in part, on Missouri and not Illinois law. But a close examination of the *White* decision and the relevant state laws indicates that the differences between the State's laws are not so significant as to render the case materially distinguishable.

In *White,* the appellant's son was injured in an automobile accident and became eligible for SSI. *Id.* at 370. Shortly thereafter, the appellant pursued a personal injury action on her son's behalf, and received a $35,000 settlement. The proceeds

were placed in a trust, and appellant was named the conservator. However, the trust provided that the proceeds were to remain in the account until the minor reached the age of majority, and noted that appellant was required to seek court approval before the funds would be distributed.

The Commissioner subsequently learned about the existence of the trust, terminated the minor's SSI, and sought reimbursement for previously paid benefits. Appellant simultaneously requested a hearing before an ALJ, and petitioned the probate court for the release of $500 a month for her son's care. The probate court denied the petition, stating that the funds were not to be used for the minor's daily care. Nevertheless, the ALJ found that the settlement trust constituted liquid resources. In reaching his conclusion, the ALJ suggested that perhaps the appellant's request for funds was inartful or excessive, and that a more appropriate petition would warrant release of the funds. *Id.* at 372. The ALJ's decision rested upon the premise that "actual access to the funds is irrelevant, because the regulations provide that if the claimant has *a right* of access to the funds, that is enough to trigger a finding of excess resources." *Id.* at 373. The district court upheld the ALJ's decision, reasoning that the fact that a disbursement was possible rendered the funds available. *Id.* at 372.

13

The Seventh Circuit reversed. The Court noted that, under Missouri law, "the conservator is not required to provide for the care and maintenance of the protected person . . but has the power to do so. However, it may still be presumed, absent evidence to the contrary, that the funds in a conservatorship or 'blocked' account are available for the care and maintenance of the protected individual." *Id.* at 373. The Court concluded, however, that the appellant's evidence - consisting of her testimony and her attorney's affidavits- was sufficient to rebut that presumption. *Id.* at 374. The Court labeled the Commissioner's assertions that perhaps the appellant simply worded her filings incorrectly as mere speculation and not sufficient evidence that the funds were resources. *Id.*

Illinois law differs from the Missouri law at issue in one important respect: under Illinois law, a conservator, under a court's direction, "shall" apply the minor's estate as necessary for his support, POMS SI CHI101140.215(B)(1), whereas Missouri law merely gives the conservator the power to do so. *White*, 167 F.3d at 374. But in the instant case, the only evidence in the Record indicates that Plaintiff did attempt to apply the funds in the accounts for Sylvester's care; unfortunately, she was allegedly prohibited from doing so by the circuit court. Notably, Illinois courts are *not required* to release such funds for a minor's care. The Illinois Probate Act provides that,

where a minor's money has been deposited under court supervision, "the court *may*" on petition of a guardian, order that the money be dispersed for the use, comfort, and support of the minor. 755 ILCS 5/24-21( c). The Probate Act's use of the term *may* indicates that the court's refusal to release the funds is within the state court's discretion. *Compare White,* 167 F.3d at 375. Thus, the Court finds that the differences between Missouri and Illinois law do not render the holding in *White* materially distinguishable. Pursuant to the holding in *White*, the ALJ should have examined the Plaintiff's evidence and explained why that evidence was insufficient to demonstrate that the funds in the accounts were not available to Plaintiff.

The Commissioner then attacks the persuasiveness of Plaintiff's evidence, noting that Plaintiff, who was represented by an attorney at her hearing before the ALJ, failed to produce any petitions, filings, court records, or other documents supporting her claim that she petitioned the circuit court for funds to care for Sylvester, and that the circuit court denied such petition(s) because the Trust cannot be accessed for such purposes[2].

---

[2] Again, the Court notes that the ALJ left the Record open for over 60 days to enable Plaintiff's attorney to produce such documentation. One permissible inference from Plaintiff's failure to do so is that such evidence does not exist; another is that such evidence is actually unfavorable to Plaintiff's position.

15

However, the Commissioner cannot rely upon this basis to defeat Plaintiff's claim, for the simple reason that the ALJ did not discuss Plaintiff's somewhat sparse evidence regarding the availability of the funds in the accounts. Caselaw is clear that "general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ." *Golembiewski v. Barnhart,* 322 F.3d 912, 916 (7th Cir. 2003).

Because the ALJ failed to address Plaintiff's testimony and her attorney's affidavit regarding the availability of the funds in the accounts, the Court cannot conclude that substantial evidence supports his conclusion that the accounts constituted resources rendering Sylvester ineligible for SSI. *See Zblewski v. Schweiker,* 732 F.2d 75, 79 (7th Cir.1984) ("It is more than merely 'helpful' for the ALJ to articulate reasons ... for crediting or rejecting particular sources of evidence. It is absolutely essential.... [W]hen the ALJ fails to mention rejected evidence, 'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored .") (quoting *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir.1981)).

II. The Appeals Council's Decision is not Reviewable.

Although the Court is remanding this matter, and the additional evidence may be made part of the record, the Court will nevertheless address Plaintiff's contention that the Appeals

16

Council erred with regard to the impact of Judge McGury's letter. Whether this Court may review the Appeals Council's decision turns upon whether the Council committed an error of law in determining that Judge McGury's letter did not constitute new and material evidence. The relevant regulation provides that:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b). If the Appeals Council committed an error of law in applying this regulation, this Court's review is *de novo*. Absent such an error, the Council's decision whether to review the matter is discretionary and unreviewable. *Eads v. Secretary of the Department of Health and Human Services*, 983 F.2d 815, 817 (7th Cir. 1993); *Damato v. Sullivan*, 945 F.2d 982, 988 (7th Cir. 1992).

Plaintiff argues, in essence, that the Appeals Council must have concluded that Judge McGury's letter was not new and material, because it did not proceed to a full hearing on Plaintiff's case. The Court disagrees. Plaintiff's argument mirrors the argument made, and rejected, in *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997). In *Perkins*, the Seventh

Circuit noted that the "Appeals Council did not refuse to consider Perkins' additional materials. To the contrary . . .it 'evaluated the entire record including the new and material evidence submitted' and concluded that 'neither the contentions nor the additional evidence provide[d] a basis for changing the [earlier] decision." *Id.* The Court concluded that this evaluation is all that is required under the applicable regulations, rejecting Perkins' argument that, once the Council determined that the subsequently submitted evidence was new and material, a full blown hearing was required. The Appeals Council's conclusion that this new and material evidence did not undermine the ALJ's earlier opinion was a discretionary decision, which did not constitute an error of law and was not reviewable. *Id.*

The Appeals Council in the instant case proceeded in a remarkably similar manner. The Council expressly stated that it was denying Plaintiff's request to review the ALJ's decision. R at 4. The Appeals Council considered the additional evidence, but simply concluded that it did not "provide a basis for changing" the ALJ's decision. In doing so, the Appeals Council properly fulfilled its obligations under 20 C.F.R. § 404.970(b), because the Council: 1) acknowledged that the evidence was relevant; 2) treated the evidence as new and material; but 3) concluded that it did not undermine the ALJ's decision. As

such, this Court will not review the Appeals Council's discretionary determination.

## CONCLUSION

For the reasons set forth above, the Court DENIES the Commissioner's Motion for Summary Judgment, and GRANTS Plaintiff's Motion for Summary Judgment, in part, remanding the matter back to the Commissioner for further action consistent with this Opinion. In this regard, the Court emphasizes that, other than his failure to address Plaintiff's testimony and her attorney's affidavit regarding the availability of the funds in the accounts, the Court finds no fault with the ALJ's analysis. Upon remand, the ALJ may- but is not required to - have another hearing in this matter.

Dated: November 14, 2008     E N T E R:

*Arlander Keys*
ARLANDER KEYS
United States Magistrate Judge